UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                 :

KAMIYAH BIZZELL; GIBRAN JOHNSON;    :
and CALVIN PETERSON,                 :
                                 :
            Plaintiffs,          :
                                 :
        -against-         :       **COMPLAINT**
                                 :
THE CITY OF NEW YORK; MICHAEL DALIA; :     Index No.
WILLIAM DOOLEY; JONATHAN TRAHAN;  :
and JOHN/JANE DOES, Nos. 1-10,      :     **Jury Trial Demanded**
                                 :
          Defendants.       :
                                 :
-------------------------------------------------------------x

        Plaintiffs Kamiyah Bizzell, Gibran Johnson, and Calvin Peterson, by and through their

attorney, Robert T. Perry, allege upon knowledge, information and/or belief as follows:

## PRELIMINARY STATEMENT

        1.     Plaintiffs bring this action under 42 U.S.C. § 1983, the Fourth, Fifth and

Fourteenth Amendments to the United States Constitution, and New York law against: the City

of New York ("City"); Police Officer Michael Dalia of the Police Department of the City of New

York ("NYPD"); NYPD Sergeant William Dooley; NYPD Police Officer Jonathan Trahan; and

other NYPD officers whose identities are presently unknown to plaintiffs.

        2.     On Saturday evening, May 2, 2020, NYPD officers entered Teamworkon3 Juices,

a juice bar in East Harlem, ostensibly to investigate a violation of the prohibition against non-

essential gatherings during the COVID-19 pandemic.  Most of the officers were maskless, even

though a recently issued executive order required all New Yorkers to wear a mask covering their

mouth and nose when out in public and when social distancing could not be maintained.

3.     Despite lacking a search warrant, NYPD officers proceeded to search Teamworkon3 Juices.  Defendant Dalia later claimed to have recovered two firearms from the juice bar, though there is no video evidence that any firearms were recovered inside Teamworkon3 Juices, not only because NYPD officers disabled security cameras in the juice bar but also NYPD officers were not wearing their body-worn cameras.

4.     Plaintiffs -- one of whom was the father of the owner of Teamworkon3 Juices, another of whom was a part-time employee at the juice bar, and the third of whom was visiting and helping out, and all of whom are African American -- were arrested and prosecuted on firearm possession charges based on complaints sworn to by defendant Dalia, falsely alleging, among other things, that plaintiffs possessed two firearms allegedly recovered from Teasmworkon3 Juices.  On May 14, 2021, after plaintiffs had made multiple court appearances, all charges were dismissed.

5.     The City's failure to treat allegations of false statements by NYPD officers with the seriousness such allegations deserve -- thereby creating a culture in which such statements are condoned -- led and/or contributed to, and was the moving force behind, the injuries suffered by plaintiffs, including loss of liberty, emotional distress and loss of income.

6.     Plaintiffs seek a declaratory judgment that the City's custom, practice and policy of tolerating false statements by NYPD officers violated plaintiffs' right to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution, right not to have police fabricate evidence and use it to bring false charges against an arrestee under the Fifth Amendment to the United States Constitution, and right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.  Plaintiffs also seek compensatory and punitive damages to the extent permitted by law.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over plaintiffs' federal law claims under 42 U.S.C. §
1983 and 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

8.     This Court has jurisdiction over plaintiffs' state law claims under 28 U.S.C. §
1367(a).

9.     Plaintiffs' claim for declaratory relief is authorized by 28 U.S.C. §§ 2201 and
2202, 42 U.S.C. § 1983, Rule 57 of the Federal Rules of Civil Procedure, and the Court's
inherent equitable authority.

10.     Venue is proper in the Southern District of New York under 28 U.S.C. §
1391(b)(2) because a substantial part of the events giving rise to plaintiffs' claims occurred in
this district.

## JURY DEMAND

11.     Plaintiffs demand a trial by jury on each and every claim for which a jury trial is
available under Fed. R. Civ. P. 38(b).

## PARTIES

12.     Plaintiff KAMIYAH BIZZELL is a resident of the County of the Bronx in the
City and State of New York.  Ms. Bizzell is African American.

13.     Plaintiff GIBRAN JOHNSON is a resident of the County of the Bronx in the City
and State of New York.  Mr. Johnson is African American.

14.     Plaintiff CALVIN PETERSON is a resident of the County of the Bronx in the
City and State of New York.  Mr. Peterson is African American.

15.     Defendant THE CITY OF NEW YORK (the "City") is, and was at all relevant
times, a municipal corporation duly organized and existing under the laws of the State of New

York.  The City operates the Police Department of the City of New York ("NYPD"), which acts

as the City's law enforcement agent and for which the City is ultimately responsible.  The City

assumes the risks incidental to the maintenance of a police force and the employment of police

officers, as said risks attach to the public consumers of the services provided by the NYPD.

16.     Defendant MICHAEL DALIA (Shield No. 2310) is, and was at all relevant times,

a duly appointed agent, employee, officer, and servant of the NYPD.  At the time of the incident

that gave rise to plaintiffs' claims, defendant Dalia was a police officer assigned to the NYPD's

Intel-Criminal Intel Section.  Defendant Dalia is being sued in his individual and official

capacities.

17.     Defendant WILLIAM DOOLEY is, and was at all relevant times, a duly

appointed agent, employee, officer, and servant of the NYPD.  At the time of the incident that

gave rise to plaintiffs' claims, defendant Dooley was a sergeant assigned to the NYPD's 25th

Precinct.  Defendant Dooley is being sued in his individual and official capacities.

18.     Defendant JONATHAN TRAHAN is, and was at all relevant times, a duly

appointed agent, employee, officer, and servant of the NYPD.  At the time of the incident that

gave rise to plaintiffs' claims, defendant Trahan was a police officer assigned to the NYPD's

Intel-Criminal Intel Section.  Defendant Trahan is being sued in his individual and official

capacities.

19.     All "John Doe" and "Jane Doe" defendants are, and were at all relevant times,

duly appointed agents, employees, officers and servants of the NYPD.  The Doe defendants are

being sued in their individual and official capacities.

20.     At all relevant times, the individual defendants were acting under color of state

law in the course and scope of their duties and functions as agents, employees, officers and

4

servants of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions and duties.  At all relevant times, the individual defendants were acting for and on behalf of the NYPD, with the power and authority vested in them as agents, employees, officers and servants of the NYPD.

21.     At all relevant times, the individual defendants acted jointly and in concert with each other.  Each individual defendant had the duty and the opportunity to protect plaintiffs from the unlawful actions of the other individual defendants but each individual defendant failed and refused to perform such duty, thereby proximately causing plaintiffs' injuries.

## STATEMENT OF FACTS

22.     On Saturday evening, May 2, 2020, Ms. Bizzell and Mr. Johnson were lawfully present inside Teamworkon3 Juices, a juice bar, at 2007 Lexington Avenue in East Harlem.  Mr. Johnson worked there part-time, and Ms. Bizzell, mother of Mr. Johnson's infant child, was visiting and helping out.

23.     At about 10:00 p.m., over 10 NYPD officers, including defendants Dalia, Dooley and Trahan, entered Teamworkon3 Juices, announcing that they were there to investigate a violation of the prohibition against non-essential gatherings during the COVID-19 pandemic.

24.     Most of the officers, including defendants Dalia, Dooley and Trahan, were maskless, even though Governor Cuomo had recently issued an executive order requiring all New Yorkers to wear a mask covering their mouth and nose when out in public and when social distancing could not be maintained.

25.     At the time the NYPD officers entered Teamworkon3 Juices, Ms. Bizzell was standing behind a counter in the middle of the juice bar, Mr. Johnson was washing dishes at the

sink at the back of the store and Keith Shenery, another Teamworkon3 Juices employee, was downstairs in the basement preparing juices for the next day.

26.     Two Teamworkon3 Juices customers were also present, buying takeout beverages, as allowed under the regulations then in effect for the COVID-19 pandemic.

27.     As soon as she saw NYPD officers entering Teamworkon3 Juices, Ms. Bizzell yelled down to Mr. Shenery to come upstairs, which he did.

28.     As she came out from behind the counter, Ms. Bizzell received a cell phone call from Calvin Brown, who owned Teamworkon3 Juices.

29.     Ms. Bizzell briefly spoke with Mr. Brown, letting him know that a group of NYPD officers had entered Teamworkon3 Juices.

30.     A minute into the call, an NYPD officer commanded Ms. Bizzell to hang up, which she promptly did.

31.     After hanging up, Ms. Bizzell told Mr. Johnson and Mr. Shenery that Mr. Brown had said not to worry because he would be watching on the security camera videos.

32.     Upon hearing what Ms. Bizzell said, an NYPD officer -- a Doe defendant -- unplugged the security cameras in Teamworkon3 Juices, thus preventing the cameras from recording the police actions in the juice bar.

33.     None of the NYPD officers who entered Teamworkon3 Juices appeared to be wearing body-worn cameras, even though they were required by the NYPD to wear such cameras while on duty.

34.     Despite lacking a search warrant, the NYPD officers, including defendants Dalia, Dooley and Trahan, proceeded to search the premises, including the basement.

35.     Defendant Dalia later claimed to have recovered a loaded black Taurus 9 mm in plain view sticking out of a black plastic bag in a basket in the basement, though plaintiffs have never seen any video evidence -- body-worn or security camera footage -- that defendant Dalia, in fact, recovered any such firearm.

36.     Neither Ms. Bizzell nor Mr. Johnson nor Mr. Shenery had any knowledge of any firearm being kept or maintained inside Teamworkon3 Juices and were completely surprised when later told that a firearm allegedly had been recovered in the basement.

37.     At no time were Ms. Bizzell or Mr. Johnson or Mr. Shenery in actual or constructive possession of any firearm in Teamworkon3 Juices.

38.     Despite Ms. Bizzell's and Mr. Johnson's lack of proximity to the firearm allegedly recovered by defendant Dalia from the basement, defendants Dalia, Dooley and Trahan and other police officers -- Doe defendants -- took Ms. Bizzell and Mr. Johnson, as well as Mr. Shenery, into custody, handcuffing them behind their backs.

39.     Mr. Peterson, whose son Calvin Brown (also African American) owns Teamworkon3 Juices, arrived at the juice bar during the police search.

40.     Mr. Peterson had been in Teamworkon3 Juices earlier that evening but left before the NYPD officers arrived.

41.     Mr. Peterson was on his way home in a cab, when he received a phone call from a friend who lived near Teamworkon3 Juices, letting Mr. Peterson know that police officers had entered the juice bar.

42.     Mr. Peterson immediately asked the cab driver to turn around and return to Teamworkon3 Juices.

43.     Mr. Peterson had to exit the cab a block away from Teamworkon3 Juices, because police vehicles occupied the entire block in front of the juice bar.

44.     Upon arriving at the entrance to Teamworkon3 Juices, Mr. Peterson asked police officers standing outside that he be let into the juice bar, as his son, Mr. Brown, was the owner, but the officers would not let Mr. Peterson enter.

45.     Mr. Peterson recognized many police officers present, because he had interacted with them at the 25th Precinct.

46.     Since Teamworkon3 Juices opened in 2016, police officers from the 25th Precinct had repeatedly stopped Teamworkon3 Juices customers on the street, asking them about activities in the juice bar.

47.     On information and belief, police officers from the 25th Precinct did not stop customers of white-owned stores in the vicinity to ask them about activities in those stores.

48.     Seeking to improve relations with the 25th Precinct, Mr. Peterson and his son, Mr. Brown, for several years regularly attended monthly community meetings at the 25th Precinct, complaining about police harassment of Teamworkon3 Juices customers but offering to assist the police in any way they could to address legitimate law enforcement issues.

49.      Mr. Peterson and his son, Mr. Brown, had no knowledge of any firearm being kept or stored inside Teamworkon3 Juices.

50.     At no time was Mr. Peterson or his son, Mr. Brown, in actual or constructive possession of any firearm in Teamworkon3 Juices.

51.     Even though Mr. Peterson was not present in Teamworkon3 Juices when defendant Dalia allegedly found the loaded black Taurus 9 mm sticking out of a black plastic bag

in a basket in the basement, defendants Dalia, Dooley and Trahan and other police officers -- Doe defendants -- took Mr. Peterson into custody, handcuffing him behind his back.

52.     Ms. Bizzell, Mr. Johnson and Mr. Peterson, as well as Mr. Shenery, were taken to the 25th Precinct, where they were held for more than a day in dangerous, unsanitary conditions that significantly increased their risk of exposure to the COVID-19 virus.

53.     There was no social distancing in the holding cell in which Mr. Johnson and Mr. Peterson, as well as Mr. Shenery, were kept, and most police officers they interacted with were maskless.

54.     There was no toilet in the first holding cell in which Ms. Bizzell was kept and the toilet in the second holding cell in which she was kept was backed up, so she had to urinate in a cup.  There were also no sanitary napkins.

55.     On Sunday afternoon, May 3, 2020, Ms. Bizzell, Mr. Johnson and Mr. Peterson, as well as Mr. Shenery, were finally told that they had been arrested on firearm possession charges.

56.     After being fingerprinted and photographed, Ms. Bizzell, Mr. Johnson and Mr. Peterson, as well as Mr. Shenery, were transported downtown to Central Booking in Manhattan.

57.     On Sunday evening, May 3, 2020, at about 6:20 p.m., NYPD officers, including defendant Dalia, returned to Teamworkon3 Juices, this team with a search warrant and allegedly -- according to defendant Dalia -- recovered a loaded silver derringer with a pearl handle from a metal refrigerator underneath a counter.

58.     Earlier that day, an NYPD officer had told Mr. Johnson at the 25th Precinct that NYPD officers had already allegedly recovered the loaded silver derringer with a pearl handle but were just waiting on the search warrant.

9

59.    Ms. Bizzell, Mr. Johnson and Mr. Peterson, as well as Mr. Peterson's son, Mr. Brown, and Mr. Shenery, had no knowledge of any firearm being kept or stored inside Teamworkon3 Juices, let alone the loaded silver derringer with a pearl handle allegedly recovered by defendant Dalia from a metal refrigerator underneath a counter.

60.    At no time were Ms. Bizzell, Mr. Johnson or Mr. Peterson or his son, Mr. Brown, or Mr. Shenery in actual or constructive possession of any such firearm in Teamworkon3 Juices.

61.    Indeed, neither Ms. Bizzell nor Mr. Johnson nor Mr. Peterson nor Mr. Peterson's son, Mr. Brown, nor Mr. Shenery were present in Teamworkon3 Juices when defendant Dalia allegedly recovered the loaded silver derringer with a pearl handle nor had they been present in the juice bar since being taken into custody the previous day.

62.    Between May 2 and 4, 2020, one or more NYPD officers, including defendants Dalia, Dooley and Trahan, met with an assistant district attorney in the New York County District Attorney's Office ("District Attorney") and misrepresented that Ms. Bizzell, Mr. Johnson and Mr. Peterson, as well as Mr. Shenery, were in possession of firearms inside Teamworkon3 Juices.

63.    On Monday evening, May 4, 2020, Ms. Bizzell, Mr. Johnson and Mr. Peterson, as well as Mr. Shenery, were arraigned in the Criminal Court of the City of New York, New York County ("Criminal Court"), on charges of Criminal Possession of a Firearm (N.Y. Penal Law § 265.01-b(1)) based on two complaints sworn to by defendant Dalia.

64.    In one complaint, defendant Dalia alleged that "[o]n or about May 3, 2020 at about 6:20 p.m., at 2007 Lexington Avenue the defendants possessed a firearm":

 I observed Defendants Keith Shenery, Kamiyah Bizzell, and Gibran Johnson inside of the above location.  I further observed defendant Calvin Peterson in front of the above described location.  I am informed by defendant Peterson that he is the owner of the above described location.

I observed that as soon as you enter the above location there was a counter directly in front.  I further observed that there was a refrigerator directly underneath the counter.

Pursuant to search warrant N0313-2020 signed by Hon. Judge Cruz, on May 3, 2020, approximately 6:30 p.m., I recovered a silver derringer with a pearl handle from the refrigerator located below the counter.  I observed the derringer was loaded with two rounds.

65.     Defendant Dalia's allegations were materially false in at least four respects.  First, Ms. Bizzell, Mr. Johnson and Mr. Peterson never possessed -- actually or constructively -- a silver derringer with a pearl handle.  Second, Mr. Peterson did not own Teamworkon3 Juices and never told defendant Dalia or any NYPD officer that he owned the juice bar.  Third, as Ms. Bizzell, Mr. Johnson and Mr. Peterson have never seen any video showing that defendant Dalia, in fact, recovered a silver derringer with a pearl handle from Teamworkon3 Juices, they deny that defendant Dalia recovered any such firearm from the juice bar.  Fourth, a police officer at the 25th Precinct told Mr. Johnson on May 3, 2020 that the derringer had been recovered prior to the issuance of the search warrant.

66.     In the other complaint, defendant Dalia alleged that "[o]n or about May 2, 2020 at about 9:50 p.m., at 2007 Lexington Avenue the defendants possessed a firearm":

I observed Defendants Keith Shenery, Kamiyah Bizzell, and Gibran Johnson inside of the above location.  I further observed defendant Calvin Peterson in front of the above described location.  I am informed by defendant Peterson that he is the owner of the above described location.

I observed that as soon as you enter the above location there was a counter directly in front.  I further observed that there was a stairwell on the left to a basement area.

I took the stairs to the basement area.  I further observed the handle of a firearm sticking out of a black plastic bag in the basement area one foot from the base of the stairs in [a] basket.  I recovered the above described firearm and observed that it was a black Taurus 9 mm loaded with 17 rounds.

67.     Defendant Dalia's allegations were materially false in at least three respects. First, Ms. Bizzell, Mr. Johnson and Mr. Peterson never possessed -- actually or constructively -- a black Taurus 9 mm.  Second, Mr. Peterson did not own Teamworkon3 Juices and never told defendant Dalia that he owned the juice bar.  Third, as Ms. Bizzell, Mr. Johnson and Mr. Peterson have never seen any video showing that defendant Dalia, in fact, recovered a black Taurus 9 mm from Teamworkon3 Juices, they deny that defendant Dalia recovered any such firearm from the juice bar.

68.     Ms. Bizzell, Mr. Johnson and Mr. Peterson, as well as Mr. Shenery, pleaded not guilty and were released on their own recognizance on Monday evening, May 4, 2020, after approximately two days in custody.  Their cases were adjourned for grand jury action.

69.     No grand jury indictment was ever returned against Ms. Bizzell, Mr. Johnson or Mr. Peterson or Mr. Shenery.

70.     In early March, 2021, the District Attorney sought an order to take DNA samples from Ms. Bizzell, Mr. Johnson and Mr. Peterson, as well as Mr. Shenery, to compare with DNA supposedly found on the firearms allegedly recovered by defendant Dalia inside Teamworkon3 Juices on May 2 and 3, 2020, but the presiding judge refused to sign the order because defendant Dalia had conducted an unlawful, warrantless search of Teamworkson3 Juices on May 2, 2020.

71.     On May 14, 2021, all charges against Ms. Bizzell, Mr. Johnson and Mr. Peterson, as well as Mr. Shenery, were dismissed on the grounds that the District Attorney could not prove the charges beyond a reasonable doubt and for failure to prosecute within the time limits prescribed under New York Criminal Procedure Law § 30.30.

72.     Between May 4, 2020, when they were arraigned, and May 14, 2021, when the criminal cases were dismissed, Ms. Bizzell, Mr. Johnson and Mr. Peterson had to make multiple

appearances -- some virtual, some in-person -- in Criminal Court to defend themselves against the false charges.

73.     On information and belief, Teamworkon3 Juices was targeted for law enforcement action on May 2, 2020 because it was a black-owned business.

74.     As a result of the above police actions, Ms. Bizzell, Mr. Johnson and Mr. Peterson suffered deprivation of liberty, emotional distress, mental anguish, shock, fright, apprehension, embarrassment, and humiliation.  Ms. Bizzell also lost her job as a personal care aid and had to drop out of school, where she was studying to become a personal care technician.

**The City's Custom, Practice and Policy of Tolerating Police Officer Fabrications**

75.     The NYPD has long failed to treat allegations of false statements by police officers with the seriousness such allegations deserve, thereby creating a culture in which false statements by police officers are condoned.

76.     True, Patrol Guide § 203-08 ("Making False Statements"), adopted by the NYPD in 1996 at the urging of the Commission to Combat Police Corruption ("CCPC"), provides that: "Intentionally making a false official statement regarding a material matter will result in dismissal from the [NYPD], absent exceptional circumstances."

77.     In the NYPD disciplinary system, however, most false statement-related cases are not charged under Patrol Guide § 203-08 but rather under Patrol Guide § 203-10(5) (the so-called "Conduct Prejudicial" provision) or Patrol Guide § 203-05 ("Performance on Duty-Generally"; prohibiting false record entries) -- provisions that lack Patrol Guide § 203-08's presumptive dismissal penalty.  *The Report of the Independent Panel on the Disciplinary System of the New York City Police Department* 39 (Jan. 25, 2019) ("*Independent Panel Report*"), *available at* independentpanelreportnypd.net/assets/report.pdf.

78.     Even when charging a police officer under Patrol Guide 203-08, the NYPD typically recommends a punishment allowing the officer to remain employed (for example, a forfeiture of vacation days), despite Patrol Guide § 203-08's presumptive dismissal penalty. *Independent Panel Report* at 39-40 (citing CCPC, *Eighteenth Annual Report of the Commission*, 113-116 (Aug. 2017), *available at* https://wwwl.nyc.gov/assets/ccpc/dowloads/pdf/18th -Annual-Report.pdf.)

79.     Of 81 cases between 2010 and 2018 in which the Civilian Complaint Review Board ("CCRB") documented a police officer lying and referred the matter to the NYPD for further investigation, the NYPD upheld the CCRB's accusation in only two cases, finding no wrongdoing or finding the officer guilty of lesser misconduct in the other 79 cases.  Joseph Goldstein, *Promotions, Not Punishments, for Officers Accused of Lying*, N.Y. Times, Mar. 19, 2018, *available at* https://www.nytimes.com/2018/03/19/nyregion/new-york-police-perjury-promotions.html.

80.     Some police officers suspected of giving false testimony have even later received promotions, including: Konrad Zakiewicz, who was promoted to detective in 2017, despite having been accused by two federal judges of testifying falsely in gun cases in 2013; Nector Martinez, who received his gold detective shield in November 2017, despite falsely testifying against a woman in a gun case in October 2017, nearly sending her to prison; Sean Kinane, who was promoted to detective in 2017, despite having been found "unreliable" and "not credible" by a federal judge in a drug case in 2016; and Christopher McCormack, who was promoted to deputy chief and put in charge of detectives in Manhattan North in 2017, despite a federal judge having found little of McCormack's testimony credible in a 2016 case.  Goldstein, *supra*.

14

81.     Even after a federal jury in a civil rights case in November 2014 found Undercover Officer C0039 ("UC 39") to have fabricated evidence against Kwame Garnett in a buy-and-bust drug case in East Harlem, causing Mr. Garnett to spend nearly eight months in jail before being acquitted of all charges, and awarded punitive damages against the undercover officer, *see Garnett v. Undercover Officer C0039*, 838 F.3d 265 (2d Cir. 2016), the NYPD continued to use UC 39 in buy-and-bust drug cases, never disciplining him for fabricating evidence against Mr. Garnett.

82.     Historically, the NYPD has also been reluctant to systematically gather and analyze information about arrests that prosecutors decline to prosecute because of police officer credibility concerns or cases in which judges make adverse findings about officer credibility. *Independent Panel Report* at 40.

83.     Given the NYPD's failure to treat allegations of false statements by police officers with the seriousness they deserve, it is not surprising that officer "testilying" remains a "stubborn problem" within the NYPD:

> An investigation by the New York Times found that on more than 25 occasions since January 2015, judges or prosecutors determined that a key aspect of a New York City police officer's testimony was probably untrue.  The Times identified these cases -- many of which are sealed -- through interviews with lawyers, police officers and current and former judges.
> . . .
> The 25 cases identified by the Times are almost certainly only a fraction of those in which officers have come under suspicion for lying in the past three years.  That's because a vast majority of cases end in plea deals before an officer is ever required to take the witness stand in open court, meaning the possibility that an officer lied is seldom aired in public.  And in the rare cases when an officer does testify in court -- and a judge finds the testimony suspicious, leading to the dismissal of the case -- the proceedings are often sealed afterward.

> Still, the cases identified by the Times reveal an entrenched perjury problem several decades in the making that shows little sign of fading.

Joseph Goldstein, '*Testilying' by Police: A Stubborn Problem*, N.Y. Times, Mar. 18, 2018,

*available at* https://www.nytimes.com/2018/03/19/nyregion/testilying-police-perjury-new-york.html.

84.     In failing to treat allegations of false statements by police officers with the seriousness such allegations deserve, the City, through the NYPD, has acted in deliberate indifference to the constitutional rights of Ms. Bizzell, Mr. Johnson and Mr. Peterson, among others.

85.     The NYPD's failure to treat allegations of false statements by officers with the seriousness such allegations deserve -- thereby creating a culture in which such statements are condoned -- led and/or contributed to, and was the moving force behind, the injuries suffered by Ms. Bizzell, Mr. Johnson and Mr. Peterson.

## FIRST CLAIM FOR RELIEF

### False Arrest Claim Under 42 U.S.C. § 1983
### (Against the Defendant Police Officers)

86.     Ms. Bizzell, Mr. Johnson and Mr. Peterson reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

87.     The defendant police officers, including defendants Dalia, Dooley and Trahan, acting under color of state law, individually and in concert and within the scope of their authority, stopped, arrested and caused Ms. Bizzell, Mr. Johnson and Mr. Peterson to be imprisoned without probable cause or reasonable suspicion to believe that they had committed any crime or offense, in violation of their right to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution.

88.     As a result of the foregoing, Ms. Bizzell, Mr. Johnson and Mr. Peterson suffered

deprivation of liberty, emotional distress, and other damages and injuries, and Ms. Bizzell also

suffered loss of income.

89.     The unlawful conduct of the defendant police officers was willful, malicious,

oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed

against them.

## SECOND CLAIM FOR RELIEF

### Denial of Right to Fair Trial Claim Under 42 U.S.C. § 1983
### (Against the Defendant Police Officers)

90.     Ms. Bizzell, Mr. Johnson and Mr. Peterson reallege and incorporate by reference

the allegations set forth in the foregoing paragraphs as if fully set forth herein.

91.     The defendant police officers, including defendants Dalia, Dooley and Trahan,

acting under color of state law, individually and in concert and within the scope of their

authority, fabricated evidence of a material nature likely to influence a jury's decision, forwarded

that evidence to prosecutors, and Ms. Bizzell, Mr. Johnson and Mr. Peterson suffered deprivation

of liberty and property as a result, in violation of their right not to have police fabricate evidence

and use it to frame and bring false charges against an arrestee under the Fifth Amendment to the

United States Constitution.

92.     As a result of the foregoing, Ms. Bizzell, Mr. Johnson and Mr. Peterson suffered

deprivation of liberty, emotional distress, and other damages and injuries, and Ms. Bizzell also

suffered loss of income.

93.     The unlawful conduct of the defendant police officers was willful, malicious,

oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed

against them.

## THIRD CLAIM FOR RELIEF

### Malicious Prosecution Claim Under 42 U.S.C. § 1983
### (Against the Defendant Police Officers)

94.     Ms. Bizzell, Mr. Johnson and Mr. Peterson reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

95.     The defendant police officers, including defendants Dalia, Dooley and Trahan, acting under color of state law, individually and in concert and within the scope of their authority, and acting with malice, caused Ms. Bizzell, Mr. Johnson and Mr. Peterson to be prosecuted, despite a lack of probable cause to initiate or continue the criminal proceedings, and the proceedings terminated in their favor on the merits, in violation of their right to be free from malicious prosecution under the Fourth Amendment to the United States Constitution.

96.     As a result of the foregoing, Ms. Bizzell, Mr. Johnson and Mr. Peterson suffered deprivation of liberty, emotional distress, and other damages and injuries, and Ms. Bizzell also suffered loss of income.

97.     The unlawful conduct of the defendant police officers was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## FOURTH CLAIM FOR RELIEF

### Denial of Equal Protection of the Law Claim Under 42 U.S.C. § 1983
### (Against the Defendant Police Officers)

98.     Ms. Bizzell, Mr. Johnson and Mr. Peterson reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

99.     The defendant police officers, including defendants Dalia, Dooley and Trahan, acting under color of state law, individually and in concert and within the scope of their

authority, targeted Ms. Bizzell, Mr. Johnson and Mr. Peterson for law enforcement action based on their race, in violation of their right to equal protection of the law under the Fourteenth Amendment to the United States Constitution.

100.     As a result of the foregoing, Ms. Bizzell, Mr. Johnson and Mr. Peterson suffered deprivation of liberty, emotional distress, and other damages and injuries, and Ms. Bizzell also suffered loss of income.

101.     The unlawful conduct of the defendant police officers was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## FIFTH CLAIM FOR RELIEF

**Failure to Intervene Claim Under 42 U.S.C. § 1983**
**(Against the Defendant Police Officers)**

102.     Ms. Bizzell, Mr. Johnson and Mr. Peterson reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

103.     The defendant police officers, including defendants Dalia, Dooley and Trahan, each had an affirmative duty to intervene on behalf of Ms. Bizzell, Mr. Johnson and Mr. Peterson, whose constitutional rights were being violated in that defendant's presence by other police officers, but failed to intervene to prevent the unlawful conduct, despite having a realistic opportunity to do so, in violation of Ms. Bizzell's, Mr. Johnson's and Mr. Peterson's right to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution, right not to have police fabricate evidence and use it to frame and bring false charges against an arrestee under the Fifth Amendment to the United States Constitution, and right to equal protection of the law under the Fourteenth Amendment to the United States Constitution.

104.    As a result of the foregoing, Ms. Bizzell, Mr. Johnson and Mr. Peterson suffered

deprivation of liberty, emotional distress, and other damages and injuries, and Ms. Bizzell

suffered loss of income.

105.    The unlawful conduct of the defendant police officers was willful, malicious,

oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed

against them.

## SIXTH CLAIM FOR RELIEF

### Monell Claim Under 42 U.S.C. § 1983
### (Against the City)

106.    Ms. Bizzell, Mr. Johnson and Mr. Peterson reallege and incorporate by reference

the allegations set forth in the foregoing paragraphs as if fully set forth herein.

107.    At all relevant times, the City, through the NYPD, implemented, enforced,

encouraged, sanctioned, and/or ratified a custom, practice, and/or policy of not treating

allegations of false statements by police officers with the seriousness they deserve.

108.    The above custom, practice, and/or policy evidenced the City's deliberate

indifference to the constitutional rights of people like Ms. Bizzell, Mr. Johnson and Mr. Peterson

who come in contact with police officers and allowed for the individual defendants to violate Ms.

Bizzell's, Mr. Johnson's and Mr. Peterson's right to be free from unreasonable seizure under the

Fourth Amendment to the United States Constitution, right not to have police fabricate evidence

and use it to frame and bring false charges against an arrestee under the Fifth Amendment to the

United States Constitution, and right to equal protection of the law under the Fourteenth

Amendment to the United States Constitution.

109.    As a result of the above custom, practice, and policy, Ms. Bizzell, Mr. Johnson and Mr. Peterson suffered a deprivation of liberty, emotional distress and other damages and injuries, and Ms. Bizzell suffered loss of income.

## Supplemental State Law Claims

110.    Ms. Bizzell and Mr. Johnson reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

111.    Ms. Bizzell and Mr. Johnson timely served upon, presented to, and filed with defendant City a Notice of Claim setting forth all facts and information required under New York General Municipal Law § 50-e.

112.    More than thirty (30) days have elapsed since the presentation of Ms. Bizzell's and Mr. Johnson's claims to defendant City but defendant City has wholly neglected or refused to make an adjustment or payment thereof.

113.    This action was commenced within the time allowed to commence actions asserting claims against defendant City under New York General Municipal Law § 50-i(1)(c).

114.    Ms. Bizzell and Mr. Johnson have complied with all conditions precedent to maintaining this action.

## SEVENTH CLAIM FOR RELIEF

### Malicious Prosecution Claim Under New York Law
### (Against All Defendants)

115.    Ms. Bizzell and Mr. Johnson reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

116.    The defendant police officers, including defendants Dalia, Dooley and Trahan, acting in concert and within the scope of their authority, and also acting with malice, caused Ms.

Bizzell and Mr. Johnson to be prosecuted, despite a lack of probable cause to initiate or continue the criminal proceeding against them, and the proceeding terminated in their favor on the merits.

117.    As a result of the foregoing, Ms. Bizzell and Mr. Johnson suffered deprivation of liberty, emotional distress, and other damages and injuries, and Ms. Bizzell suffered loss of income

118.    Defendant City is liable to Ms. Bizzell and Mr. Johnson for the damages that they suffered under the doctrine of *respondeat superior*.

## EIGHTH CLAIM FOR RELIEF

### Negligent Screening, Hiring and Retention Claim Under New York Law
### (Against Defendant City)

119.    Ms. Bizzell and Mr. Johnson reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

120.    Defendant City failed to use reasonable care in the screening, hiring and retention of the NYPD employees who participated in the above unlawful conduct.

121.    As a result of the foregoing, Ms. Bizzell and Mr. Johnson suffered deprivation of liberty, emotional distress, and other damages and injuries, and Ms. Bizzell suffered loss of income.

## NINTH CLAIM FOR RELIEF

### Negligent Training and Supervision Under New York Law
### (Against Defendant City)

122.    Ms. Bizzell and Mr. Johnson reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

123.    Defendant City failed to use reasonable care in the training and supervision of the NYPD employees who participated in the above unlawful conduct.

124.   As a result of the foregoing, Ms. Bizzell and Mr. Johnson suffered deprivation of liberty, emotional distress, and other damages and injuries, and Ms. Bizzell suffered loss of income.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs demand the following relief against the defendants, jointly and severally:

(a)   compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b)   punitive damages against the individual defendants;

(c)   injunctive relief declaring that defendant City's custom, practice and/or policy tolerating police officer fabrications violated plaintiffs' right to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution, right not to have police fabricate evidence and use it to frame and bring false charges against an arrestee under the Fifth Amendment to the United States Constitution, and right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution;

(d)   reasonable attorneys' fees and costs of this litigation; and

(e)   such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
       July 6, 2022

Respectfully submitted,

ROBERT T. PERRY
rtperry32@gmail.com
509 12th Street, Suite 2C
Brooklyn, New York 11215
(347) 415-5272
*Counsel for Plaintiffs*